# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF GEORGIA
# VALDOSTA DIVISION

| | | |
|---|---|---|
| UNITES STATES POSTAL SERVICE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| vs. | * | CASE NO. _____ |
| | * | |
| CHILD SUPPORT SERVICES OF | * | |
| ATLANTA, INC., and it dba various names | * | |
| which include Child Support as a part of | * | |
| the name, | * | |
| | * | |
| Defendant. | * | |

## COMPLAINT FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION, AND PERMANENT INJUNCTION

**COMES NOW,** the United States Postal Service by and through the United States Attorney for the Middle District of Georgia and states its complaint against the Defendant for a temporary restraining order and a temporary injunction as follows:

1. This Court has jurisdiction in this case under 28 U.S.C. § 1339 (2007) and 39 U.S.C. § 3007 (2007).

2. Plaintiff, the United States Postal Service (USPS), is an independent establishment of the executive branch of the Government of the United States with the power and authority to sue in its official name under 39 U.S.C. §§ 201 and 401 (1988).

3. Defendant Child Support Services of Atlanta, Inc. is a corporation organized and existing under the laws of the State of Georgia with its principal place of business being at 408 Force Street, Valdosta, Lowndes County, Georgia and with a registered agent at that address.

The principal owner, director or person governing the operation of the business entity Child Support Services of Atlanta, Inc. is believed to be Stuart Clay Cole.

1

4. The Defendant does business under names which are derivations of the name of the corporate Defendant, most commonly including the word "Child Support" and/or "Child Support Services" and frequently with further descriptive or identifying information appended.

5. Defendant receives mail at, and seeks remittances of money through the mail under the name Child Support Services and variations thereon at the following addresses:

P.O. Box 520
Lake Park, GA 31636-0520
    - and at -
P.O. Box 1712
Carson City, NV 89702-1712
    - and at -
P.O. Box 2949
Birmingham, AL 35202-3804
    - and at -
P.O. Box 535
Jackson, MS 39205-0535
    - and at -
P.O. Box 87120
Atlanta, GA 30337-0120
    - and at -
P.O. Box 292231
Nashville, TN 37229-2231
    - and at -
P.O. Box 1118
Tallahassee, FL 32302-1118
    - and at -
P.O. Box 31104
Raleigh, NC 27622-1104
    - and at -
P.O. Box 88297
Carol Stream, IL 60188-0297
    - and at -
P.O. Box 12721
Columbia, SC 29211-2721
    - and at -
P.O. Box 8753
Albany, NY 12208-0753
    - and at -
P.O. Box 662
Harrisburg, PA 17108-0662
    - and at -

      P.O. Box 26395
      Wilmington, DE 19899-6395
          - and at -
      P.O. Box 15191
      Sacramento, CA 95851-0191

    5.    On August 28, 2009, the Chief Postal Inspector of the USPS filed a Complaint (the "Administrative Complaint") with the Office of Administrative Law Judges in Washington, D. C. The Administrative Complaint invokes 39 U.S.C. § 3005 in alleging that the Defendant has been/is engaging in a scheme to obtain money or property through the United States mail by means of false representations. Upon a proper showing in that forum, USPS is entitled to obtain orders of a Judicial Officer under which it and its various postmasters through whom the Defendant receives mail of the kind described herein are forbidden to pay any Postal Money Order drawn to the order of the Defendant unless it is clear that the Money Order does not relate to the activities complained of herein, required to refund to the remitter the amount of any such Money Order payment of which is refused hereunder upon presentment by the remitter of the original of the Money Order or a duplicate thereof issued by the Plaintiff, required to hold for not less than 48 hours (exclusive of days during which postal offices are not open to the public) all mail addressed to the Defendants except for any mail determined by reference to the face of the wrapper not to be related to the activities complained of herein, required to permit inspection by the Defendants of any mail so held during the 48 hours in the presence of Postal Service employees, permit the Defendants to receive any mail revealed in the aforementioned inspection not to be connected to the activities complained of herein or is mail requesting a refund connected with such activities, and required at the end of the 48 hour period just described to write plainly or stamp on any mail of Defendants remaining in possession of the Postal Service following inspection the words "Returned to Sender Due to Addressee's Violation of Postal False Representation Law" to return any such mail so marked to its senders or, if the sender

cannot be identified from the outside of the mail wrapper, to dispose of it under postal regulations applicable to undeliverable mail.

A true and correct filed copy of the said Administrative Complaint is affixed to this Complaint in this Court as Component A (it having its own exhibits and attachments) and is incorporated herein by reference thereto just as if the facts and allegations contained therein were restated herein verbatim.

6. The activities of the Defendant which are the subject of the Administrative Complaint have been and are the subject of an investigation by USPS Inspector Sheryl J. Bouer. The details of Inspector Bouer's investigation are contained in her affidavit (the "Bouer Affidavit") which is affixed to this Complaint as Component B and is incorporated herein by reference thereto just as if the facts and allegations contained therein were restated herein verbatim.

7. The Defendant is engaged in a private business that collects child support payments from non-custodial parents not under any court order to pay child support by threats or intimidation and from those under court orders in accordance with those orders by fraud and misrepresentation. The Defendant uses various methods to identify non-custodial and custodial parents including, but not limited to, the Internet and listings in Directory Assistance wherein Defendant is linked to a government child support collection agency. The Defendant also obtains the names of custodial and non-custodial parents from public records.

8. The individuals identified by Defendant as aforesaid are then contacted by telemarketers employed by Defendant and deceived and misled on the nature and substance of the service the Defendant will provide. Persons who are enrolled in Defendant's service are required to execute an "Agreement," which is misrepresented to them. The Defendant then

charges both the custodial and non-custodial parent significant fees that are unreasonable and excessive.

9.      The victims of this scheme are directed by Defendant's agents to remit payments of varying amounts to the addresses listed in paragraph 5, above. The address to which a particular victim is instructed to send his/her payment is dependent on their location and/or the state in which the person resides. Most of these addresses are located in the capital city of the relevant state, thus reinforcing the representation that the Defendant is affiliated with a state agency. Pursuant to the direction of the Defendant remittances to addresses outside the State of Georgia, are forwarded to the Defendant's principal place of business in Georgia or other addresses to which there would be ready access.

10.     Defendant's is a scheme to obtain money through the mail based on false representations through the following non-exclusive statements and conduct:

    (a) CSS is a state agency or is affiliated with a state agency that has the authority and responsibility to collect child support payments through various legal and extra-legal processes;

    (b) In part, the claim by CSS that it is a state agency or is affiliated with a state agency was accomplished by misrepresentations that it had an actual presence, rather than merely a post office box, in the capital city of a state in which it did business;

    (c) CSS solicited business and defrauded those with whom it did business by misrepresenting its fees and charges;

    (d) CSS induced custodial and non-custodial parents that were already under a valid State court ordered child support regimen to terminate their affiliation with the State of Georgia's Office of Child Support Services;

    (e) In other instances, CSS committed explicit fraud by forging correspondence to state child support collection entities to indicate the correspondence was sent by a person being served by the state entity and to direct the state entity to close its file to allow CSS to then serve the custodial parent whose signature it forged;

(f) In still other cases, the result achieved by CSS discussed in the foregoing paragraph was achieved by phone calls by CSS employees in which they identified themselves as the custodial parent;

(g) CSS went to fraudulent lengths to conceal the fact that it was a private business;

(h) CSS and threatened via telephone and more often by mail non-custodial parents with non court ordered arrest warrants, license suspensions and wage garnishments to induce them into collection contracts;

(i) CSS would send non-custodial parents official looking documents that appear to have come from the State of Georgia courts;

(j) CSS refused to allow custodial parents to cancel their contracts after Custodial Parents notified CSS within the 48 hour period as it states on their contracts and advertised on its website, childsupportservicesnationwide.com;

(k) Funds obtained by CSS from custodial and non-custodial Parents were converted to personal use;

(l) CSS further misled consumers as to its location by publishing, under the category "Child Support Collection" a telephone number with the area code 404. Calls to that number were actually forwarded to a number with a 727 area code that originated out of St. Petersburg, Florida;

(m) CSS further misled consumers by publishing and/or so indicating in directory assistance services that it was several different entities at several different locations; and

(n) CSS further misled consumers by publishing and/or so indicating in directory assistance services that it was a governmental entity.

11.    Plaintiff proceeds in this case under 39 U.S.C. § 3007 contemporaneously with the aforementioned Administrative Complaint, to obtain a temporary restraining order, followed by a temporary injunction, directing the detention by it and its various postmasters through whom the Defendant receives mail in any and all districts, of the defendant's incoming mail, which is the subject of the aforementioned proceeding under 39 U.S.C. § 3005 and is described in Component A hereto, in the Bouer Affidavit which is Component B hereto, and in the foregoing.

12.     Under 39 U.S.C. § 3007, upon a proper showing of proof of a likelihood of success on the merits of the proceedings in the Administrative Complaint under 39 U.S.C. § 3005, the Postal Service is entitled to a temporary restraining order and a preliminary injunction directing the detention of incoming mail at the address where payment is received until the administrative proceedings and any appeals therefrom are concluded.  The Postal Service may apply for such relief in any district in which mail is sent or received as part of the alleged scheme.  Upon such proper showing, the court shall enter an order directing the postmaster in any and all districts to detain the Defendant's mail which is the subject of the proceedings under 39 U.S.C. § 3005.

13.     As the Postal Service sets forth in its Memorandum of Law accompanying this complaint and in the attached Bouer Affidavit, there is a proper showing of the likelihood of success on the merits of the proceedings under 39 U.S.C. § 3005.

14.     Inspector Sheryl J. Bouer has received information from all of the post offices referenced in the foregoing paragraph 5 confirming that each was receiving mail on a regular basis addressed to the Defendant and in some cases as much as 100 pieces were being received in a single day, most of which is believed to be remittances of child support or fees.  Witnesses have indicated that receipts by CSS are as much as $45,000 per week

15.     Unless the Court grants relief under 39 U.S.C. § 3007, Defendant will be free to continue to receive the proceeds from this scheme via U.S. Mail until the close of administrative proceedings and to thereby continue to defraud those with whom it deals.

16.     Pursuant to 39 U.S.C. § 3007 (1999) and Rule 65(b) of the Federal Rules of Civil Procedure, Plaintiff requests that this Court enter a Temporary Restraining Order (TRO) and

subsequently a temporary injunction directing the detention of Defendant's incoming mail while proceedings under 39 U.S.C. § 3005 (1999) are pending.

17. The TRO is warranted because there is a substantial likelihood that the Plaintiff will succeed on the merits of its 39 U.S.C. § 3005 administrative proceeding where it will prove that Defendants are conducting a scheme to defraud in violation of 39 U.S.C. § 3005.

18. 39 U.S.C. § 3007 permits the Court to grant Defendant the right to examine the detained mail and to receive any mail that clearly is not connected with the alleged unlawful activity. Conversely, Plaintiff is obligated to return to the remitter/sender any mail of the connected with the fraudulent practices which are the subject of this complaint.

19. In accordance with the foregoing, Plaintiff requests that the terms of the TRO requested herewith and the substance of the temporary injunction to follow will be as set forth in the proposed TRO which is attached to this Complaint as Component C and made a part hereof by reference thereto.

20. Plaintiff's undersigned attorney acknowledges his duty under Rule 65(b)(1)(B) of the Federal Rules of Civil Procedure to "certif[y] in writing any efforts made to give notice [of the immediate request via this pleading for a TRO and the scheduling of an appearance before a Judge of the United States District Court for the Middle District of Georgia of a hearing at which to obtain the issuance of the TRO] and the reasons why it should not be required." The undersigned will comply therewith once the case is filed, it is assigned and there is some prospect of presenting the matter to the Court for issuance of the TRO, whereupon he will enter the required certification into the record by addendum hereto.

**WHEREFORE,** Plaintiff prays that,

(a) Summons and process issue as by law provided,

(b) The within request for a TRO be set for a hearing at the earliest possible opportunity,

(c) The Plaintiff's request for a TRO be granted and the proposed TRO attached to this complaint issue as to form and substance,

(d) A time for the expiration of the TRO and a time for a hearing on the Plaintiff's request for a temporary injunction be set therein,

(e) A temporary injunction issue following the hearing thereon, and

(f) Plaintiff have such other and further relief as to the Court may seem just and appropriate.

                G. F. PETERMAN, III
                ACTING UNITED STATES ATTORNEY
                ATTORNEY FOR PLAINTIFF


By:    s/STEWART R. BROWN
        Assistant United States Attorney
        Georgia State Bar # 089650
        United States Attorney's Office
        Middle District of Georgia
        P.O. Box 1702
        Macon, Ga. 31202-1702
        Telephone: (478) 621-2690
        Facsimile: (478) 621-2737